[Crim. No. 12409.   Second Dist., Div. Four.   July 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. DANIEL
CORDOVA HIRSCH, Defendant and Appellant.

Michael Hannon, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Stanton Price, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was charged with possession of heroin for sale (Health & Saf. Code, § 11500.5) and possession of marijuana (Health & Saf. Code, § 11530). Trial was by the court, the People's case being submitted on the transcript of the preliminary examination. The defense called the People's witnesses for further cross-examination, and defendant testified, admitting two alleged prior felony convictions (burglary and robbery). He was found guilty as charged, denied probation and sentenced to state prison, the two counts being ordered to run concurrently. This is an appeal from the judgment.

Two issues are raised, (1) the legality of the search which produced the contraband and (2) the voluntariness of defendant's statements to the police admitting its ownership.

Two deputy sheriffs testified for the People. Deputy Trujillo related that he and his partners, Kennerly and Nelson, were conducting a narcotics investigation of an apartment at 4292 Dennison Street, Los Angeles. At about 7:30 p.m. on November 1, 1965, they "staked-out" the apartment. They had received information a few days before from two separate informants that narcotics were being sold at this apartment. They considered the informants to be reliable. Both had supplied information in the past leading to the apprehension of narcotics violators in the same general area. The information given by one informant had led to four arrests and convictions; the other had supplied information which led to from 100 to 150 arrests.[1] From their vantage point, the officers observed five men enter the apartment. Three of the men left a few minutes later. Defendant came out shortly thereafter, walked over to where a Cadillac had just parked and appeared to talk with the man and woman in it. Defendant then walked to a Chevrolet parked nearby, talked to its occupants for a few minutes and went back inside the apartment. A short time passed and three other men walked up to the apartment. The door was opened slightly. They did not enter but turned around and walked back across the street.

---

[1] At the preliminary hearing the officer refused to divulge the identity of the informers. The magistrate, exercising his discretion, denied a defense motion seeking to require disclosure after the officer testified disclosure would place their lives in jeopardy.

About a minute later defendant came outside, joined them and they walked off together. At this time the Cadillac they had observed previously drove up and again parked. The officers approached the car. After conversing with the man and woman inside (who identified themselves as Sharon Steele and Donald Gauthier), they arrested them for a narcotics offense.

Accompanied by Officer Kennerly, Trujillo then proceeded to the apartment and knocked on the door. A woman opened the door and Trujillo informed her that a narcotics investigation was in progress. At this point Trujillo heard the sound of running water and a toilet flushing. He entered the house and ran to the bathroom. A little girl, about 10, opened the bathroom door slightly and said she was the only one in the bathroom and was taking a bath. Trujillo and Kennerly then walked back toward the front door. As they were about to go outside, defendant and a man named Jiminez entered.

Upon being questioned by the officer, defendant admitted he was "running from" his parole officer and that he was using narcotics. Trujillo observed he had numerous puncture marks on his right arm. Also, that his eyes were severely pinpointed and his speech slurred. The officer concluded he was under the influence of narcotics and placed him under arrest, informing him of his constitutional rights. Upon being asked if he lived at the apartment, defendant stated that for several weeks he had been staying there.

Deputy Kennerly related that, after defendant had been placed under arrest by Trujillo, he began to search the apartment. On top of a dresser in one of the two bedrooms, he found a balloon containing what appeared to be heroin and two handrolled cigarettes which appeared to contain marijuana. On top of the bed were nine empty balloons and a box of empty gelatin capsules. At various other locations in the same bedroom, he found several more balloons filled with what appeared to be heroin. In addition, he found a narcotic outfit and another box of empty gelatin capsules in a jacket in a closet. Two other narcotic outfits were later discovered, one in the living room.

While the search was being conducted, defendant, Jiminez, Yolanda Beruman, Sharon Steele and Donald Gauthier, were all present in the living room, along with Mrs. Beruman's two children. Someone asked "who was going to jail," or words to that effect, and Kennerly replied, that if they did not find the owner of the contraband they had found, possibly every-

body would go to jail. Upon being shown the narcotics and the outfits, all but defendant denied ownership. Defendant admitted that each item found was his.

The items found in the apartment were introduced against defendant. It was stipulated that a chemist tested the contents of the balloons and found they contained heroin, and had examined the two cigarettes and concluded they were marijuana. There was enough heroin to make over 500 capsules.

In his testimony defendant denied he was living at the Dennison Street address. He stated that, when he was questioned by the officers, three times he denied any knowledge of the narcotics. He finally made the statement admitting ownership because one of the officers threatened to take everyone to jail unless he confessed. He thought the officer meant the children would also be taken to jail. They were his brother's children.

■ We consider first the contention urged regarding the propriety of the search which turned up the contraband. Defendant maintains that the officers illegally entered the apartment. He points out that the evidence establishes they entered without benefit of a warrant and without consent. He argues that the entry cannot be justified on the ground there was probable cause for the officers to believe a crime was being committed inside the apartment.

Defendant's position is that because the magistrate did not require the arresting officer to divulge the identities of the informers, the information supplied by them may not be considered to establish probable cause; that, without it, no probable cause is shown. The rule enunciated in *Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39], which is relied on by defendant to support his position, is no longer the law. (See *Martin* v. *Superior Court*, 66 Cal.2d 257 [57 Cal.Rptr. 351, 424 P.2d 935].) Code of Civil Procedure, section 1881.1 (enacted in 1965), makes such evidence admissible to establish reasonable cause for arrest or search although the judge exercises his discretion to permit nondisclosure of the informer's identity, if the informer is shown to be reliable. The section has been held to be constitutional. (*Martin* v. *Superior Court*, *supra*, 66 Cal.2d 257, 258-259.)

■ Here, the informers were clearly shown to be reliable. Hence, the evidence respecting what the officers were told by the informers may properly be considered. With this information and with what they had themselves observed immediately prior to their entry, the officers were plainly justified in enter-

ing the house when they heard the toilet flushing, to prevent what they believed to be an attempt to dispose of contraband, and to arrest the person disposing of same. The fact the assumption on their part proved wrong, does not vitiate the lawfulness of that entry. Defendant's arrest which followed was shown to be based on probable cause. The search was a reasonable incident to his arrest, and thus justified.

As his second point, defendant maintains his statement admitting ownership of the contraband was not properly admitted, because it was the product of police coercion. The evidence, he argues, indicates the statement was made in response to a threat by one of the officers, that if he did not confess, his friends and relatives, including the children, would all be taken to jail. This is defendant's version of what transpired. The trial court was entitled to accept the officer's version. The only question for debate here is whether there is substantial evidence in the record to support a finding the statement made was free and voluntary.

Deputy Kennerly testified he had remarked that possibly everyone would go to jail if they did not find out who owned the contraband; he made the comment to several persons, including defendant, who were present in the apartment; he made it in response to a query by one of them. Three narcotic injection outfits had been found in addition to the narcotics. At the point the comment was made, all the adults were clearly suspects, and the arrest of all of them would have been fully justified. We have no trouble concluding that the officer was entitled to state to these suspects what the reality of the situation was. It did not make defendant's subsequent admission less than a free and voluntary statement. The fact his motive in making the statement may have been to secure the release of friends and relatives does not render it inadmissible. (*People* v. *Jones,* 221 Cal.App.2d 37, 40 [34 Cal.Rptr. 267].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.